IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAUL LEE JACKSON,

        Petitioner,

v.                                                                           Civil Action No. 3:08CV103
                                                                           Criminal Action No. 3:02CR35

UNITED STATES OF AMERICA,            (JUDGE BAILEY)

        Respondent.

**REPORT AND RECOMMENDATION
THAT §2255 MOTION BE DENIED**

**I. INTRODUCTION**

On June 23, 2008, petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.[1] On June 24, 2008, the Court ordered the Government to respond to petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.[2] The Government filed a Motion for an Extension of Time to File Response on June 27, 2008[3], which was granted on June 30, 2008.[4] The Government filed its Response to Petitioner's Motion Made Pursuant to 28 USC 2255 on August 8, 2008.[5] Petitioner filed his Reply Brief to Respondents Response to Petitioners 28 U.S.C. § 2255 on August 21, 2008.[6]

**II. FACTS**

---

[1] Docket No. 691

[2] Docket No. 692

[3] Docket No. 693

[4] Docket No. 694

[5] Docket No. 704

[6] Docket No. 709

### A. Conviction and Original Sentence

Petitioner was charged on three counts in the thirty count indictment returned in Criminal Action Number 3:02CR35 on July 9, 2002 in the United States District Court, Northern District of West Virginia. Petitioner was charged in Count 1 with conspiracy with intent to distribute in excess of fifty (50) grams cocaine base, also known as "crack," a Schedule II narcotic drug-controlled substance, as designated by Title 21, United States Code, Section 812(c), Schedule II(a)(4); in violation of Title 21, United States Code, Section 846 and 841(b)(1)(A). Petitioner was charged in Counts 8 an 9 with aiding and abetting in the distribution of cocaine base, also known as "crack" in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.

On December 2, 2002, petitioner entered his plea in open court, without a plea agreement. Petitioner was 35 years old and was a high school graduate. (Plea transcript p. 5). The Court read Counts 1, 8, & 9 of the indictment to petitioner and asked petitioner after reading each Count if the petitioner understood the charge. (Id. at 6-8). Each time petitioner indicated that he understood. (Id.). The Court advised petitioner of the potential sentencing exposure he faced by entering a plea of guilty, and that no one could know the exact sentence until the Pre-Sentence Report was completed. (Id. at 8 - 13). Petitioner indicated that he understood. (Id.). The Court then reviewed all of the rights petitioner was giving up by pleading guilty. (Id. at 13 - 16). The Court asked petitioner if he fully understood the consequences of entering a guilty plea. (Id. at 16). Petitioner stated that he did. (Id.).

During the plea hearing, the Government presented the testimony of Ted Snyder, Berkeley County Sheriff's Department to establish a factual basis for the plea. (Id. at 16 - 21).

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Counts 1, 8, and 9. (Id. at 21 - 22). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 22). The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 23). Finally, petitioner said he was in fact guilty of the crimes to which he was pleading guilty. (Id.).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt. (Id. at 23 - 24). The petitioner did not object to the Court's finding.

A Pre-Sentence Investigation Report was conducted by the United States Probation Office, and on July 15, 2003, petitioner appeared before the Court for sentencing. Petitioner was sentenced to 240 months incarceration followed by three years of supervised release. (Sentencing transcript pp. 71- 74).

**B.      Appeal**

On July 31, 2003, petitioner filed a notice of Appeal with the United States Court of Appeals for the Fourth Circuit,[7] which affirmed petitioner's sentence, on September 20, 2004.[8]

Petitioner then filed a petition for a writ of certiorari in the United States Supreme Court. The Supreme Court granted his petition and vacated the Fourth Circuit's judgment, in light of the

---

[7]Docket No. 516

[8]Docket No. 573

decision in United States v. Booker.[9] The Supreme Court remanded the case to the United States Court of Appeals for the Fourth Circuit.

On November 22, 2005, by per curium opinion, the United States Court of Appeals for the Fourth Circuit vacated petitioner's sentence and remanded the case to the district court for re-sentencing.[10]

### C. Re-sentencing

On February 21, 2006, petitioner appeared before the Court for re-sentencing. After considering several factors, including the circumstances of both the crime and the defendant and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 220 months imprisonment for Counts 1, 8, and 8 to be served concurrently, followed by a total of 60 months supervised release. (Re-sentencing hearing transcript, p. 42-3).

### D. Appeal

Petitioner filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit on February 28, 2006.[11] The Fourth Circuit affirmed petitioner's conviction and sentence by per curium opinion on August 13, 2007,[12] issuing its Mandate on September 5, 2007.[13]

### E. Federal Habeas Corpus

Petitioner contends that his counsel rendered ineffective assistance because counsel failed

---

[9]Docket No. 589

[10]Docket No. 590

[11]Docket No. 600

[12]Docket No. 637

[13]Docket No. 638

4

to investigate:

  a. the alleged drug material to prove it was not crack, and

  b. the retesting of the alleged drug material which led to falsification of laboratory results.

Petitioner also claims the United States engaged in prosecutorial misconduct by knowingly using falsified forensic drug laboratory results to:

  a. falsely indict petitioner, and

  b. to induce petitioner to plead guilty.

The Government contends that petitioner stated under oath at the Rule 11 colloquy that petitioner was pleased with his counsel's representation, and that petitioner fails to show any improper conduct.

  **F.**   **Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence be denied and dismissed from the docket because petitioner's claims are without merit.

### III. ANALYSIS

  **A.**   **Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought

pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va. Jan. 4, 2006).

B. **Procedural Default**

The Court finds petitioner is not procedurally barred from raising claims of ineffective assistance of counsel in his present § 2255 motion. It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

C. **Claim 1: Whether Counsel Rendered Ineffective Assistance in Failing to Investigate: a.) the Alleged Drug Material To Prove That It Was Not Crack and b.) the Retesting of the Alleged Drug Material which Led to Falsification of Laboratory Results.**

Petitioner claims he informed his counsel that he was actually innocent – that the alleged drug substance was baking soda and ether. Petitioner then recounts the West Virginia State Police's termination of Trooper White for irregularities in forensic drug testing. Because Trooper White conducted the first forensic analysis of the substance in petitioner's case, petitioner contends that the analysis was a fraud. Thereafter, petitioner takes issue with the

6

Assistant United States Attorney assigned to petitioner's case and petitioner's counsel agreeing to permit another Chemist at the West Virginia State Police forensics laboratory conduct a test of the substance. Petitioner claims that such an agreement was against his interest and amounted to deficient counseling because the West Virginia State Police Forensics Laboratory was corrupt. Ultimately, petitioner concludes that he "had no help from defense counsel to prove that the substance sold January 9, 2001, was a fake powered [sic] substance."

Claims of ineffective assistance of counsel are measured under a two-part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90. Second, the petitioner must demonstrate he was prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

In evaluating a post guilty plea of ineffective assistance of counsel, statements made under oath affirming satisfaction with counsel are binding, absent clear and convincing evidence to the contrary. Blackledge v. Allison, 431 U.S. 63, 74–75 (1977). A defendant who alleges

7

ineffective assistance of counsel following a guilty plea has an even higher burden–he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988).

At petitioner's Rule 11 hearing, Judge Broadwater engaged in the following colloquy with petitioner regarding counsel's effectiveness:

> THE COURT: Now, Mr. Stone has been your lawyer in this case. Do you think he's adequately represented you?
> THE DEFENDANT: Yes, sir.
> THE COURT: Is there anything you have asked your lawyer to do that he has not done?
> THE DEFENDANT: No, sir.

(Plea transcript, p. 23). Because petitioner made the preceding remarks, under oath, indicating satisfaction with counsel's services and petitioner has failed to offer any evidence beyond self-serving statements to the contrary that could be considered prejudicial, petitioner is bound by his previous representations. See Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991)(Habeas petitioner claiming ineffective assistance of counsel must identify objective evidence in support of his claim of prejudice).

Moreover, the record rebuts petitioner's claim that he received "no help" to prove the substance was "a fake powered [sic] substance." Petitioner seems to ignore that his counsel filed a motion for an independent drug sample. See Docket 147. The reason that no independent sampling was done was because petitioner pleaded guilty before the court ruled on the motion, making the motion moot. Counsel was acting on behalf of petitioner by filing a motion for an independent drug sample in an effort to exculpate petitioner. Petitioner cannot then prove that

8

counsel prejudiced him because petitioner decided to plead guilty before the motion was ruled upon and an independent sample test conducted. In addition, by pleading guilty, petitioner admitted under oath the substance was cocaine base.

> D. **Claim 2: Whether the United States Engaged in Prosecutorial Misconduct By Knowingly Using Falsified Forensic Drug Laboratory Results to: a.) Falsely Indict Petitioner, and b.) to Induce Petitioner to Plead Guilty**.

Petitioner alleges that the United States engaged in various acts of prosecutorial misconduct so as to falsely convict him. According to petitioner, the United States obtained lab results on "the substance" that petitioner sold during controlled drug buys. These lab results indicated that "the substance" was cocaine base. The Assistant United States Attorney assigned to petitioner's case decided to bring these results to the attention of the grand jury to indict petitioner. After petitioner was indicted, the Assistant United States Attorney learned that the West Virginia State Trooper who originally performed and signed off on the forensic laboratory test had his employment terminated. The Assistant United States Attorney realized that the police report and drug results did not and would not match, so the United States Attorney "knew that this was a problem that needed to be fix [sic] before the defendant was to go to trial," and submitted "the substance" to another forensic analysis by the West Virginia Police State Crime Lab. Petitioner contends that the retest was a fraud and that the Assistant United States Attorney knowingly used falsified lab results to induce petitioner to plead guilty. To support his contentions, petitioner attaches a CI-Report and the results of the two rounds of forensic testing by the West Virginia State Police Forensic Laboratory. Petitioner directs the court's attention to the differences in weight and the description of the evidence between the laboratory results, which petitioner contends conclusively proves that the Assistant United States Attorney

9

knowingly used falsified evidence.

"[R]eversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Chorman, 910 F.2d 102, 103 (4th Cir. 1990) (internal quotations omitted). Moreover, a prosecutor's knowing use of perjured testimony or knowing failure to disclose that testimony used to convict a defendant was false is a violation of due process, and a conviction must be set aside if there is a reasonable likelihood that false testimony could have affected the judgment. United States v. Bagley, 473 U.S. 667, 678 (1985).

There appears to be no such violation here. First, petitioner does not establish that the lab results are falsified. Petitioner does not demonstrate how, where, or when the results are falsified. All petitioner offers is allegations and copies of lab results. Allegations coupled with interpretive readings of laboratory results does not prove falsification of records. Moreover, if petitioner cannot demonstrate that the laboratory results are, in fact, fraudulent, then he certainly cannot demonstrate that the United States knowingly used falsified tests.

Actually, if you read petitioner's prosecutorial misconduct argument closely, it appears that petitioner is now claiming that the United States would have had trouble securing a jury verdict had the case proceeded to trial – "Had Jackson appeared in trial with the police report and forensic reports not matching could have been a major problem for the government in its case against the defendant." Thus, when petitioner uses words like could as part of his argument, petitioner offers a past conditional alternative suggestion. Petitioner could have proceeded to trial. Petitioner could have advanced such a theory at trial. However, petitioner

did not. Instead, petitioner pleaded guilty. Consequently, petitioner cannot establish prosecutorial misconduct by advancing trial strategies of how to disprove the government's case some six years after pleading guilty.

## IV. **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence be **DENIED** and dismissed from the docket.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: January 2, 2009

                                         /s/ James E. Seibert
                                         JAMES E. SEIBERT
                                         UNITED STATES MAGISTRATE JUDGE